On behalf of the Appalachian Cross Appalachians, Keith G. Carlson, on behalf of the Appalachian County Mutual Insurance Company, this matter is before the court on an appeal from summary judgment from trial court in Joe Davis County on a de novo review of the interpretation of an insurance policy compared to an underlying lawsuit filed by a gentleman named Narcovitz Lane, or NL, I might refer to him for short, and of course the court has experience with many declaratory judgment actions and appeals from those actions as the, here the Illinois Supreme Court clearly encourages those disputes to be resolved through declaratory judgment actions just like the one in this case. There is some, and there is a claim here about how it was handled and whether Country's actions were vexatious or unreasonable, or the trial court was in error to conclude they were not, or the burden had not been established to show that, I believe that as, after careful consideration of this, that the Country Mutual, Corp. 5 Country Mutual, prevailed below. But this matter both began as a reference to a claim being made. There was a claim asserted in general about the underlying facts that were set forth in the lawsuit later to which Country Mutual did respond to the claim and set forth their position under the policy and the law. It was the lawsuit was filed later, that lawsuit was tendered almost immediately, Country Mutual through myself and the letters in the record tendered a very detailed response with case law and the policies of why it believed that there was no coverage. And that's one issue about the filing of the declaratory where Mr. Doyle asserted they filed first in response to that letter almost immediately, which that letter solicited a response to those legal arguments, and the response was to immediately file the declaratory judgment action as the Doyles as plaintiffs against Country, and then Country counterclaimed, appeared and counterclaimed, so I think as the trial judge recognized that the case law is pretty clear, there is really no import who files first. It's just a case where someone identifies a dispute and then they get to the courthouse the day before someone else gets to the courthouse is of no import or significance in the fact that the Illinois Supreme Court encourages and specifically allows declaratory judgment actions to be filed without defending under rent ratio, it's or not, to decide these insurance coverage disputes, and as the court has the benefit of the allegations of the complaint, which I think are relatively straightforward, Mr. Doyle's own a building that they didn't live in, it was a, I don't know what kind of call it, industrial building or some kind of, just a building in Galena that they had a liability policy, a property policy and a liability policy with Country Mutuals, there was about a $1,200 premium. It provided standard coverages for injury or if the building burned down, there was coverage for the value of the building, if the building burned down by negligence and burned the building next door, there was potential property damage coverage, if someone slipped and fell on the property, you know, there was potential coverage for an accident, causing bodily injury, various other coverages, various other policy provisions, including some limited personal injury and advertising injury coverage. So there was some exclusions to all those coverages. Did the Doyles evict this person or did they not evict this person? Well, I guess how, I guess they certainly, they didn't evict the person. Mr. Doyle was in another country when they removed his premises, and that's alleged in the complaint. Mr. Narcos Lane claims he has another residence in Galena that he was traveling for six months, that when he got back, he didn't even learn until almost a month after he was back that his stuff he was storing there had been thrown out. So he wasn't, you say he was evicted, he was not evicted because he was in Europe. Could he go back there and find his stuff? He went back there. Could he have gone back there when he got back and found his stuff? No, he couldn't because it had been intentionally removed by the Doyles. Correct. They had hired dumpsters and went in the premises. They had the keys, obviously, or maybe they broke. I don't know how they physically got in the premises. They had leased this contract to Mr. Lane and removed the stuff and kept some of it, I guess, that he was able to retrieve. Some stuff that they didn't throw out, but clearly it was property damage that was caused by the stuff they put into the dumpster and took to the dump that was supposed of in the waste yard. It was clearly all very intentional. There's no claim that it was done by entering the wrong premises or had permission to remove the stuff. There's nothing alleged here whatsoever because there is that one issue, not raised initially by the Doyles, but later we just complete about property damage caused by an occurrence. It's clearly the property damage. We believe there is no doubt that there was no occurrence, no property damage caused by an accident that wasn't expected or intended, since it's only alleged to have been done intentionally into the premises with hiring a dumpster in advance, throwing everything out. Not everything, but keeping a few items. NL's action did allege a violation of the Forcible Entry and Detainer Act, correct? Correct, because he said he had a right to the possession to the property and to keep his property there because, which he adopted in each of his counts, the lease agreement, the contract that he had alleged that he had with the Doyles that they violated. And they violated that act because he had a possessory right to the premises for his stuff because of that contract. And that's the only way he had it. He didn't have any other rights. He didn't inherit it. He didn't buy it. He only had any rights there because of the contract he had from the Doyles to the premises, which he alleged in every count that they breached by entering the premises and removing his possessions, or not Doyle's possessions, whatever artwork he allegedly stored there. But in this case... So, I mean, the allegation was that he was evicted in violation of that act, correct? I mean, whether you're living there or you have stuff there, if the landowner, you know, wants to get you out, they should follow the Forcible Entry and Detainer Act. But he's saying that the property received there, well, he's alleging the property received there would have been to do that, and they said they did not do that. Right. And that they, like if he hadn't paid the rent or was untimely or violated some other condition of the contract, whatever, and then complied with the terms of the statute, whatever. So how is it then an eviction under the policy? I mean, the policy specifically calls for covering a wrongful eviction. So how is that within the... Premises a person occupies, and I understand that's a division. Whether you believe that possession, a person can have, you know, is anything that they have possessory right to property is a dwelling that a person can be evicted from, and that's the, I guess, the interpretation the trial court took that really changed. And our view is that's changing the language of the policy to say that you're not a premise that a person occupies, but a premise is that a person had a possessory interest in instead of a... Because he certainly wasn't there. He was in Europe when it happened, according to his own complaint. He wasn't... He said he had another residence, his personal residence in Galena, but he wasn't even there. He was... People could obviously... They could own... People could own multiple buildings. They could own storage lockers. They could own, you know, little kiosks. They could... Who knows what they could own, but the language has to mean something. A person occupies. He wasn't occupying. If we look for a legal definition, most of the time we start at that old favorite Black's Law Dictionary, and it says it defines an eviction in several ways, but one of the ways is that it dispossesses a person of land or rental property. Was he dispossessed of rental property? Again, if that was the only inquiry, yes, I can't deny that he was... They said he was intentionally dispossessed of the rental property. He said he was renting the property pursuant to the contract, and that, I guess, the property... I mean, the place was still there. His possessions inside there were removed. I mean, the... Well, there was a new owner, so by the time he got back, they probably didn't even know who he was, for all intents and purposes. Yeah, I don't know. Maybe he could have gone in there, but he had a key still. I don't know if he... A lot of thoughts were changed, but certainly his... It certainly alleges that his possessions were removed, so that's why I think the Amato Court's analysis was so illuminating to me. You know, we don't have any cases in Illinois of finding wrongful eviction for removing property. The Amato case sort of pointed out what I think is a very clear distinction. We already have property damage coverage under the policy. Now, like you did in Amato, you have that coverage there for his possessions. But not if they're taken pursuant to intentionally or expected. You can't just, if it's an accident, if they say they had multiple rental properties and they were going to help their tenant move and then they ran the wrong one and threw out the wrong stuff, you know, maybe that would be an accident. But that's not alleged here. But they do have property damage coverage, but that's not triggered. The personal injury coverage is very limited. It's changing the meaning of it. It's grouped with a group of other personal injury offenses to people, you know, pernicious prosecution, slander, libel. Well, isn't this a little different, though, than Amato in that we actually have, well, for purposes of my discussion and question now, we have an eviction. It's probably a wrongful one, although that's something that is right. And under one of the coverages of the policy, the personal and advertising injury section, it talks about a wrongful eviction. And it seems to include, or would by this definition, dispossessing him of his rental property, and in that rental property was his stuff. But that's why I understand if that was an interpretation, it was that raw. I don't think that's a plain, reasonable reading of that language when it takes out a place a person occupies. What does that mean, a person occupies? It's not you're saying his stuff is there. His stuff is occupying the space. It's not where a person is dwelling there. That's why I understand if I'm going to first do insurance coverage litigation, the argument always says that everything is construed against you, if I had a dollar for it. It's just a job for somebody to do. Right. But I understand that interpretation, but I don't think it's the reasonable interpretation from the, you look at the analysis or not, you look at the type of coverage involved, look at this type of policy. And then, of course, even if it was, even if it was, Your Honor, it is plain as day to me the breach of contract exclusion. Everything that Mr. Anarchowitz claims arises out of that contract. The only reason his property was there was that he alleges was because of his contract. He goes in great detail about the lease agreement, the contract, which is defined in Black's dictionary as a contract for premises. And he had no other rights to that property, to that space, other than through the contract. And that's what he alleges in each one of his counts, including the violation of the act, that the contract that he had with the Doyles was breached by the Doyles when they went into the space and took his property out there contrary to his rights under the contract to store his stuff there pursuant to the agreement they had. All of it arises out of that contract. That's why a motto, I mean, of course, you're not going to get to an exclusion unless you found coverage in the first place. It would be natural. But the Brochure Court, you know, the Supreme Court has made very clear, insure has a right to limit its risk under the policy through exclusions. If it applies, it must be applied as written. The argument in response to, the only argument in response to the contract, the trial court just sort of didn't really address it and said, well, they're not defending for breach of contract. I didn't quite understand that. It's like, what is alleged? It's alleged in the complaint the breach of contract. And the answer in the Doyles' brief is that, well, that would make it illusory coverage. So in the Kaiser Court case, which obviously clearly doesn't apply because we have the only, only cases that talk about eviction, you know, finding coverage, you know, in the ZRL case for a patron at a restaurant, for the rolling, I'm getting the name a little wrong, the site of the big rolling point or roll point where it was an employee who was evicted from the space he was occupying in his office. So there are, the courts are pretty clear if there is potential coverage for some cases, it can't be illusory. There has to be no coverage. The Kaiser Court decided by the Doyles for the argument of peaking was that there had to be an occurrence. And for that type of tort, there could never be an occurrence. So their argument is that there would never be any circumstances where there ever would be coverage for that. And here there clearly would be some circumstances where you didn't have a contract. And that sort of gets to the crux of it. Why would they have a contract exclusion there? You know, you're not going to ensure everybody's landlord or tenant disputes. You know, people, an insurer doesn't know what contracts you're entering into with other people. That's not a known risk. That's not something you can evaluate or underwrite. You enter into some kind of contract exposing you to incredible liabilities, and the insurer has chosen not to take that risk. And it's in the language and it's entitled to be enforced. It's not, it can't just be ignored or written over because, well, they gave some wrongful eviction coverage and then they took it away. Well, they gave property damage coverage and they take it away if you act intentionally. In the model case, they had an exclusion that they applied for business pursuits. So, you know, most people probably, if they run a business, they're more likely to run into a risk in operating their business than just sitting in their home on their sofa watching TV. But that should not be a huge exclusion on a policy for anything connected to your business if you were operating a business and you had an insurance policy. But, you know, we have a homeowner's policy that takes away exclusions for bodily injuries caused by a car. You know, there's different types of policies. And many have exclusions, and the exclusion might be rather large to a potential risk. Here we had a policy of $1,200 that the building burned down, the building destroyed another building, someone slipped and fell on the stairs, they fell through the ceiling. All kinds of things are covered. This is not covered. Clearly, even if you found the initial coverage in the first place, which we don't think exists, but if the court understands the court's argument, I respectfully disagree with, or not argument, but... Position. Position. Discussion. Hypothetical or opposing. And the trial court found at least the potential at that stage. But even if it did, I don't see how, in good faith, applying the English language and looking at the allegations of the complaint, assuming they're true, alleging the breach of this contract for each count, then you cannot find that it falls within that breach of contract exclusion. It's just plainly says breach of contract. And that's what Mr. Narcos-Lane alleges in each count of his complaint. And... I don't know if it was the... Oh, sorry. Yes, it did. Do we actually have a copy of that federal lawsuit in this record? Yes, it is. Okay. It should be. Yeah, it is, right? Yeah, it is. It wasn't in your appendix, but it's in the other record? Okay. Yes. Great. Counsel, we will have time for... Thank you. A follow-up reply. Mr. Lucas, you may proceed. And your reply, and also... Cross appeal. Cross appeal. Thank you. Please record. Mr. Carlson. Tom Lucas. I'm here to represent the Doyles in this matter. I guess the first point you're on to answer your question, the underlying federal complaint is attached to the DJ complaint as exhibited. So it is in the record, but I don't believe it's in the appendix. Can you answer this question right off the bat? In this case, did the insurer choose not to insure the risk in landlord-tenant cases? I can't imagine, Your Honor, that they did. I don't know how you can write coverage that provides the business owner, in this case a building owner, who rents property, with coverage for wrongful eviction, wrongful entry, invasion of private occupancy of a room, dwelling, or premises that a person occupies, committed on behalf, by or on behalf of, the owner, landlord, or lesser. I don't know how you can write the coverage more clearly than to have it apply in this situation, where the Doyles own a building, they lease the second floor on a month-to-month lease to Mr. Nutbrooks Lane in 2004. He uses it for storage and, he alleges, for workspace. And that's the relationship, landlord-tenant, between the Doyles and Nutbrooks Lane. And so, in 2010, when the Doyles decide they're going to sell the building, they go and they take his stuff out. And shortly thereafter, they're sued for wrongful eviction. So, you have a situation where the coverage provides, by its clear terms, and I think this is an important point that we argue below and we argue to this court. The Doyles aren't arguing that this policy, in terms of wrongful eviction, wrongful entry, is ambiguous. The coverage is clear. It clearly covers a landlord-tenant situation. If that landlord-tenant situation ends in something unforeseen or wrongful, in this case, I mean, it's clearly wrongful eviction, wrongful entry, or invasion. Those are all rather significant issues, as opposed to just a forcible entry and detainer where everybody's notified and it doesn't go as well as one hopes. Oh, correct, Your Honor. And that is exactly what Nutbrooks Lane alleges in the underlying case, that he wasn't given notice that a forcible entry and detainer complaint petition was not filed. That they just went in without proper court authority and removed his material. They don't allege that he didn't pay either, do they? No. There's no allegation that he failed to pay. It's an unfortunate situation for the Doyles to be in, but that's the situation they find themselves in. And I think the other thing that should be considered is, you know, when Country Mutual argues that this personal injury coverage that they provide only provides coverage for injuries to the person, to the natural person. That it doesn't apply in this case because Nutbrooks Lane wasn't living in the rental space. Well, first off, the policy definition of the coverage doesn't limit the nature of the occupancy. It's just the room, premises, or dwelling that a person occupies. Here, Nutbrooks Lane occupied it for purposes of storage and workspace. That's what he alleged. So he's clearly occupying the premises that he's leased. But the other point, and this is where we really have a problem with them arguing Amato, is Amato was a wrongful detention case. The facts are that Amato got some people involved in some kind of investment deal, and I think it went wrong, but they sued him. And one of the things they argued, he was supposed to provide them with an ownership interest in a company. He didn't do it. They paid $300,000. He didn't get the, the underlying plaintiffs didn't get the ownership interest. They alleged that he wrongfully detained that ownership interest that he was supposed to provide to them. And the court looked at the coverage. The false arrest, false imprisonment, wrongful detention. And the issue was, is it wrongful detention of the person or wrongful detention of property? And the court looked at those three, false arrest, false imprisonment, wrongful detention, and said, those all are torts directed against the person. So the coverage, when you consider all three, wrongful detention can't mean detention of property. It has to mean detention of the person, and therefore, there is no coverage for Amato in that case. In our case, we're talking about wrongful eviction, wrongful entry, and invasion of the right of private occupancy. When you look at the cases that have all construed this, they look at all three, and they say, those, especially wrongful eviction and wrongful entry, they're variants of the tort of trespass. And what is it? That's the invasion of the person's possessory right to property. And that's why the argument that there has to be a removal of a person in an eviction, there has to be a personal residency involved for the coverage to apply. Now, those arguments, they can't fly, because the nature of the risk or the nature of the claims that are being covered relate to a possessory interest in property being abated, invaded, by the insured, as opposed to an injury to a person, which is what Amato is dealing with. Was there a contract between Narkowitz Lane and the Doyles? I believe it's verbal. I don't believe there is a written contract. And I think he was paying $50 a month, and he was paying the utilities for the second floor. And so there was a contract. And I think we're the issue of the breach of contract exclusion. I mean, first... Did he allege breach of contract in his federal case? I'm sorry, Your Honor. And I think that was a factor that was important to the trial court, was that the underlying case is not a breach of contract case. It's a wrongful eviction case. And so, you know, when you want to say that an exclusion applies, it has to be clear under the law that it clearly applies. The exclusion is construed narrowly under the law, as opposed to the coverage grants, which are construed broadly. And Narkowitz Lane didn't sue for breach of contract. He sued for wrongful eviction. And in Country Mutual's reply brief, they cite a Seventh Circuit case, Supreme Laundry, where the breach of contract exclusion was discussed, but the court didn't get to it because the case is a trespass case. It was a business-toward-business dispute. And the court held that, well, the insurer couldn't raise the breach of contract exclusion because of a stopper. But the court went on, and if you look at the end of the Seventh Circuit opinion, Supreme Laundry, the court said, well, even if we looked at the breach of contract exclusion, number one, the underlying counterclaim that the insurer wanted coverage on was for trespass. It wasn't for breach of contract. And number two, if we're going to apply this breach of contract in this situation, we're going to have to find that the coverage is ambiguous, and therefore it gets right back to we're not going to apply the exclusion to buy coverage the insurer had the duty to defend. And although we argue that there's no ambiguity in the wrongful eviction and wrongful entry coverage, it is if you look at the cases that talk about illusory coverage, the cases that we cite. It's a situation where the coverage is provided on the one hand and taken back on the other. And that's what we have here if in a landlord-tenant situation, the landlord has coverage for wrongful eviction if he wrongfully evicts his tenant, but then loses the coverage because there's a contract between the tenant and the landlord. The illusory coverage cases, in essence, come down to we're not going to find that the coverage is illusory because there's an internal ambiguity in the policy. And the ambiguity is you've got a coverage grant here and you're taking the coverage away over here. And it's not the same as a standard exclusion because in this situation, the landlord is never going to have coverage for wrongful eviction. This isn't like ZRL where they were evicting club goers for racial reasons. And Roll Point, which is the other eviction case, didn't address the breach of contract case. But what Roll Point dealt with was whether that was the employee who was walked out, who was fired and walked out in the O.C. suit. And one of the allegations was he was evicted from his office. And the court said, well, the coverage doesn't go to whether you – it isn't defined as a legal right to the office. You don't have to be a resident to be evicted under the coverage. That's how the court interpreted the policy. They've never addressed the breach of contract exclusion. Here the policy says wrongful eviction, wrongful entry, invasion of a space that a person occupies. Apparently there's some problem with person occupying. I mean, if all of your valuable possessions are in that space, how can it be said that you don't occupy that space? Is occupy the word that's got the problem, or is it person the word that has the problem? What's – I mean, you don't think there's any problem, but let's address how you could respond to that if there was a problem. Well, I think that I don't see how you can – I don't see how you can reasonably argue that the coverage doesn't mean what was occurring in the situation. Well, because it doesn't say property. It says a person occupies, not a person and his or her property occupies, which would obviously be much clearer. But does that make the way it's worded now not clear? No, I think it means that it expands the coverage to all landlord-tenant situations, whether it's a residence, whether it's storage, whether it's commercial, a restaurant, a record store, a clothes store. I think it's expanding the coverage that's being provided. And I would also say that I think if you look at the arc of the cases addressing this coverage over time, this wrongful eviction and wrongful entry, I think the language keeps changing because the courts kept interpreting it to mean to cover racial discrimination or to cover pollution, environmental pollution. And I think the insurance companies were trying to tie the language down more to eliminate discrimination, eliminate environmental pollution, and to get it to what was intended, which was wrongful eviction committed by or on behalf of the owner, landlord, or lessor, without restricting it to the type of occupancy that was intended. You've said a couple of times that you don't believe it can reasonably be construed in any other manner as you are construing it. Is that the basis for your request for 155 sanctions? And I'll move on, Your Honor, to thank you, to our cross-appeal. Yes, I think when you screw down what our Section 155 claim is, there is no bona fide dispute here as to coverage. I mean, we think Your Honor should review the trial court's ruling de novo because it was decided on summary judgment, not at a trial. And so under ELCO and cases citing ELCO, the standard of review is de novo. And we think the trial court applied too stringent of a standard to the Section 155 claim by viewing it as the insured as a rough road to hoe and viewing vexatious as requiring some sort of harassment or ill will by the insurer. And the cases don't support either of those ideas. And also, you know, I think we have to keep in mind on the question of filing the declaratory judgment action. We're not here on estoppel. And the cases that talk about race to the courthouse are estoppel cases. And the cases that we've cited where 155 has been affirmed, you know, the courts have noted, this court noted, that one of the factors in a 155 count is did the insured have to file a lesson to get the insurance benefits? And that's what happened in this case. There's a claim that was made, was tendered, immediate denial. The suit is filed, tendered, immediate denial. We focus them on the wrongful eviction, wrongful entry coverage. Still it's not. So I think it is significant that the Doyles, you know, then found themselves in the unenviable position of having to not only defend the underlying case, but also prosecute the declaratory case. You don't find the other side's reliance on a motto to be reasonable at all? No, Your Honor. You don't find their attempt to use the breach of contract exclusion when a contract clearly is at play here unreasonable? No, Your Honor. I don't think you can take an exclusion like the breach of contract exclusion and apply it in a situation where you are giving the insured coverage for wrongful eviction in a landlord-town situation. I just don't think that's a reasonable argument. They have no case law to support it. And then to, I guess, get to conclude on the 155 issue, there is no bona fide dispute as to coverage here because the coverage was clear. The issues aren't complex. And Contra Mutual wasn't able to cite a case from anywhere in the country, Illinois, anywhere, that supported its argument that the personal injury coverage that it offered the wrongful eviction to the owner, landlord, or lessor, didn't cover a landlord-tenant situation. And therefore, based on those considerations, we're asking the court to affirm the summary judgment on duty to defend and reverse on Section 155. Thank you, Counsel. Mr. Carlson, we're going to proceed with rebuttal on your case and reply to the 155 argument. Talking again about policy, like this is a policy that was like for a landlord-tenant, like an apartment building. It says building owner. There's a building. It was like an industrial building, sort of some description, and some property coverage. There's nothing in the policy about, well, we're going to be having tenants coming in and out of the building. But a lot of times people rent their buildings out. I mean, even if it's an industrial building or something like that. Right. It's like a homeowner's policy. Look at a homeowner's policy. Every standard homeowner's policy has an exclusion for business pursuits. If you rent your apartment, a lot of people rent rooms in their house. If they do that, there's no coverage for it under virtually all states, state farm, every single policy out there. That doesn't mean that the insurer has some obligation to do something that you decided to do. It's like it's not a policy for lawsuits. It has certain coverages for $1,200, but they're written at the same time. That's why counsel could not find any Illinois case where any property had been removed. And think about the thousands of rental contracts that are entered into every year in the state of Illinois, and you think all of them go smoothly? Their courts are filled with landlord-tenant disputes. But they start with a contract. They start with litigation. They start with a notice. Then they go to court. I mean, my father would have taken something like this into his own hands and gone in and removed the property, and I told him several times, not a good idea. Most people go to court. And so, you know, even if this is a commercial building, and I assume the Doyles weren't going to live there, you are defending against a correct action. I agree with you. But if somebody does something wrong and you've allowed that in your policy or alleged to do something wrong, why isn't it covered by this policy? Because if you assume that was the premise, because the breach of contract is who takes it out. We're specifically not going to get involved in landlord-tenant disputes because that's a risk you cannot control. Well, then what's a wrongful eviction? There's the ZLR case there. They took the person from the premises. They took the person from the restaurant. There was no contract. They evicted him from the premises. He sued, and he recovered. And the court found coverage. And in only one case, there was the Role Point case. They evicted the person from the office space he was occupying. The court found coverage for him. And there was no contract involved. And they found coverage. There are all kinds of circumstances you can be evicted for, like a tort, like a slander or libel. You're just in a – but you can't do it, you know, you're given exclusion to that, but you can't do it knowing that it's false. There is an exclusion on slander and libel. Two, you can't do it – you can't do it before the policy period starts. You can't do it, you know, rising out of business or there's other exclusions. But that's the whole point. He talks about the – again, the only offense to the breach of contract was to allege that it's illusory. And that's a very rarely invoked coverage in Illinois. The courts say if there's any potential for coverage, it is not illusory. And here we have Illinois cases finding coverage for wrongful eviction in various circumstances which didn't involve a contract, a breach of a contract. Counsel, is your position then that the words wrongful eviction mean only that you must, in effect, evict the body, not any of the accoutrements that go around it? In this part, because then otherwise that would be saying the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room dwelling or premises committed by or on behalf of the owner. This takes out – why do you have that a person occupies? You don't need that language in there at all then for his interpretation or for yours. That's – you're taking out entire language there and you're changing it. If a person occupies, if it's my stuff in some room or building, isn't that how it's identified as my property as opposed to someone else's property? It doesn't say my property. A person occupies. A person is not property. Well, so your position – You're going to say the property. I'm sorry. Okay. Well, so your position would be in that – in the office case. If they then threw out his paperwork or the person's computer, that's not covered. It might not be, but they threw him out. They threw him. He was occupying the space. They threw him out and he sued saying you did it wrongfully and the restaurant – So your position is that that's the only type of eviction that was meant to be covered? I don't know. It's hard to imagine. In other factual situations there was a restaurant. But that goes to sanctions here, so I'm giving you an opportunity to sort of respond to that. Here, your position is wrongful eviction means I evicted the person without anything else. That's the only thing that's covered here? That would be – well, certainly to the exclusions, only a person, right? Because there's – there's obviously – we have 7 million people in the Chicago-Lyne area, so they're all occupying a residence somewhere. So that's potential for 7 million, you know, locations. They're in the store. They get evicted from the store. They're told we don't like your look here. We don't like your ethnic group here, so get out of my store. You know, and then they're covered for that. So there's millions of potential coverage situations. But wouldn't it also be a more traditional concept of wrongful eviction? Well, but then is the policy to be defined as what traditional concepts are with certain words? Are we looking at the language of the contract? Because, for example, the motto, it might have been that you're doing certain activities in connection with your business, but your business activities are excluded. Yes, it's traditionally that people – most people work and do business. So you're excluding a huge class of activities because most people work for a living. And – but then the insurer doesn't have to take on that risk if it's not part of the contract. It's specifically excluded. Even if you get to the interpretation, if you take out – if you sort of ignore the language of a person or interpret person as their property, even if you do that, Mr. Garfield is laying in every – in his allegations that he incorporates in every account, he talks again. First of all, he sets up the lease agreement, what the terms were, that it wasn't filed. And he goes on and on. Despite their knowledge of the existence of the lease agreement, defendants did not provide any written notice. Despite their knowledge of the existence of the lease agreement, defendants did not file or serve. Despite their knowledge of the lease agreement, every account is replete with the allegations of this lease agreement, the contract they admit to, the contract that they breached. Does it arise out of? That's what – what does arising out of mean under the law? And his only rights to anything that he alleges here all arose out of his contract. He had no other rights to that space other than the contract that he allegedly entered into with the Doyles. That's his allegation. His contract, every account of his contract – of his claim is based on this contract. And why do you not see – that's why I don't believe you see these landlord-tenant disputes in the CGL policies, because they have the breach of contract exclusion. They're not going to get into covering what's going on in the landlord-tenant court. And everybody – and maybe most people follow procedures, and it's not even wrongful in the first place, because they, you know, they serve proper notice. They don't just go and change the locks and throw people's stuff out. I've heard that happening from people, that they go and change the locks and throw it on the street. Do I occupy a rental storage locker if I throw a bunch of stuff in there? I pay money for it for about a month on a monthly basis. Why would – I'm sorry. If I have a rental storage locker in one of these historic places, and I pay the money for a month and I throw a bunch of stuff in there, am I not occupying that storage locker? Your property is occupying it. That's why it says you have a possessory interest in that – I think it's more correct to say you have a possessory interest in that space, pursuant to that whatever agreement you have with the owner. Because my property is occupying it. With the owner, right. Your property is occupying it. But it says a person. Why doesn't it say a person or their property? Why doesn't it say a person resides? Why doesn't it say that? I mean, it would be very clear if it said a dwelling or premises where a person resides. That would be a lot easier than a person occupying it. I mean, the English language is a wonderful thing. And I think it can be – obviously, words in our own dictionary have multiple definitions. They're trying to be clear. They have a section of the policy that covers a certain person. That's why you have a whole section for property damage coverages, a whole separate section for property damages. And that's what Amado looked at. They've chosen the whole policy as a whole. And, of course, even after that, we still have to look at the exclusions. And, of course, his argument is basically, well, you give some coverage and you take it away. Well, what does any exclusion do? If it didn't take it away, it didn't exist in the first place. I think his point is it takes it all away. Well, any exclusion would take it away. But how can you cover a wrongful eviction? Now, just except for the sake of argument that I disagree with your very narrow definition of that. But if you look at what an eviction means, a wrongful eviction, the basis for that person to be in the premises in the first place is a contract. No, I don't think so because that's why the ZLR case and the – if you're in a store, you never rent. I'm not saying that that's the only type of eviction. All right. I'm just saying your definition is this much of the pie. An eviction can be something more than escorting someone out of a restaurant or out of an office where there is no contractual relationship. It can be, and then that's not covered. But there's huge – millions of situations every day. Millions of people are occupying stores and offices every day. So there's millions of possibilities for coverage. So that's – it's not narrow. It's very – there's still an incredible amount of coverage. They're not covering every eviction. They're not covering ones where there's a contract with a breach of contract. They're covering wrongful evictions. What's that? They're covering wrongful evictions. Whether it doesn't involve a contract or there's other exclusions. If it was before the policy period, if it was out of a criminal act. If, like, the act of – the wrongful eviction act imposed criminal penalties, it wouldn't be covered either. If they cover property damage, they don't cover property damage if you intend or expect the damage. So that's a lot of damages a lot of times intended by people, and it's not covered. Even though it would be a huge amount of property damage out there in the world. Counsel, I'm going to give you one minute to talk about the 143 restrictions. Otherwise, he has no rebuttal. He wouldn't be able to come up and talk. Well, I think clearly, you know, as we've quoted some of the trial court, how he struggled. The court struggled, as I said, with the Amado case and didn't know if he was doing the right thing or not. And I think, you know, the – it's vexatious and unreasonable. An ill will of feeling sure that there was no basis whatsoever for their argument. Kennedy, the trial court, rejected that out of hand. Said, I wasn't sure what I was going to do. I was back and forth over this issue. And that was just over, really, the Amado decision issue and the dwelling. I didn't even get to the contract exclusion, which the court sort of didn't even really fully address there. Just sort of – and I think the contract clearly applies. And to assert, you know, we did what the Illinois Supreme Court required us to do. We were – we got notice of a claim. We explained our position. We were sued immediately. We counterclaimed immediately. We brought a declaratory judgment action in good faith. We litigated the issues promptly. We crossed motions for summary judgment. We've asked the court to determine the issues. The trial court found there is – this was – he didn't criticize Insurer at all. He said he thought Insurer did exactly what they should do under the circumstances. And then, when you're going to take it away from the trial court, whether you find it's not an abuse of discretion, but it's some other scanty no-go, did we present a bona fide issue? Is there not an issue that we're here struggling with how we should redefine this language in there of adding property into the person? We're talking about breach of contract exclusion, which clearly the courts have found. And the only argument against breach of contract, the only argument raised is the illusory coverage, which clearly is not illusory like in the Kaiser case. That was all circumstances that would preclude coverage. Did – I thought I understood Mr. Lucas to say that maybe there were three requests for you to cover or for coverage, one more of a general, then got specific in the other two, or was there just one? No. There was one. The lawsuit was – there was a claim made before a lawsuit was filed. And it was not like the allegation to this complaint or with the eviction things. It was about their property being damaged. And that was responded to. Subsequently, Mr. Lane filed his lawsuit, tendered to Country Mutual. Within a few – a couple weeks, there was a detailed letter sent. That's the one you wrote. That's the one I wrote. And then they filed suit immediately thereafter. And then that's where we're at. So there was no – and the letter solicited, if you have arguments in response, we'll listen to them. Please inform us. And there was nothing – there was no response, only the lawsuit. And then here we are. We answered it. Well, federal judges are less likely to grant continuances than we are, so maybe they felt some sense of urgency once the suit was filed. That could be. Okay. Thank you. Great. Counsel, thank you. Mr. Lucas, your rebuttal on the 155 issue. Thank you, Your Honor. I think to clear up one point, Your Honor, in essence, there were three communications regarding coverage to Country Mutual. The first was when the claim was made and tendered, and that was about a year before the lawsuit, maybe nine months or so. The second was when the lawsuit was tendered – was filed, and then it was immediately tendered. And shortly after that – well, okay, the suit's filed April 15, 2011. It's tendered – no, I think I have the suit date. In any event, my point was after the tender, we wrote a letter, a third letter to Country Mutual saying focus on the wrongful eviction coverage. And the next thing we got was the coverage denial. When you talk about is there a bona fide dispute here, I think it's important to note that in the trial court and here, I haven't heard Country Mutual articulate when a landlord sued by a tenant for wrongful eviction would be covered under this policy because of the breach of contract exclusion. I haven't heard where that coverage is. And they cite ZRL and Role Point, but neither of those cases addressed the breach of contract exclusion. And they say, well, there's no Illinois case that has considered whether wrongful eviction charged against a landlord by a tenant would be covered under the personal injury coverage. My answer to that is a reasonable insurer wouldn't take the position Country Mutual has taken in this case. If they're providing this coverage, at a minimum, they would have provided a defense to their insurer rather than deny that defense and take the position that has no rational support in the case law that they can cite on this particular coverage. I think the cases were cited for the proposition that that coverage is not a loser, that that coverage could cover certain other things out there, that not every eviction involves a contract. Correct. But those cases didn't involve wrongful eviction by a landlord of a tenant either, which is the exact situation here. And I think the one final point I'll make in terms of what person occupies means in the coverage, my sense in looking at all the cases over the years is the insurance industry put in the room, premises, or dwelling that a person occupies. So they don't get cases of environmental pollution. Like the Greenwell case that the 2nd District decided a number of years ago, that was a gasoline tank that ruptured and the gasoline spread to the adjoining property. Well, if we looked at the coverage today, we might say, well, polluting the land doesn't necessarily mean it's covered because you didn't injure or evict the person from the room, dwelling, or premises that they occupy. Of course, it depends on the allegations and the underlying complaint, but I think person occupies, the insurance companies were trying to limit the coverage or get away from the possibility of covering environmental pollution. But with that said, there's certainly no limitation in this policy that says a landlord-tenant wrongful eviction dispute is not going to be covered because you have a lease agreement, which is a contract. So when you read the coverage, I think you'd have to read it broadly. It provides coverage to the door as country mutual owed a defense and denied it without a rational basis. Thank you very much. We'd like to thank the attorneys for their arguments. The case will be taken under advisement and we're adjourned for the day. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. You guys both did fine. It can be a tough subject to listen to after they come back for lunch, but I didn't notice anybody falling asleep. Even though I kind of didn't want to say anything to it, just because of the coverage dispute at the bar, it's not necessarily a... Ooh, coverage dispute. Peppers versus Maryland. I'm going to tell you about the story of the initial insurer. Well, have a great day, guys. Thank you. Thanks.